Argued and submitted February 8, affirmed June 29, 1983

# STATE ex rel ADULT AND
# FAMILY SERVICES DIVISION,
*Respondent on Review,*

*v.*

# BRADLEY,
*Petitioner on Review.*

## (TC D 8008 66894, CA A22419, SC 28949)

666 P2d 249

Gerald D. Wygant, Portland, argued the cause and filed the briefs for petitioner on review.

Paul J. Lipscomb, Salem, argued the cause for respondent on review. With him on the brief was Blair, MacDonald, Jensen & Lipscomb, Salem.

Before Lent, Chief Justice, Peterson, Campbell, Roberts, Carson and Jones, Justices.**

ROBERTS, J.

---

** Jones, J. did not participate in this decision.

## ROBERTS, J.

■   The state brought a filiation proceeding under ORS 109.125(1)(b) to establish defendant's support obligation for a child to whom it was furnishing support.[1] The child was born on October 7, 1972. Plaintiff brought this action in August, 1980, when the child was seven years and 10 months old. The statute of limitation in effect when the child was born limited the time for bringing filiation proceedings to six years from birth. ORS 109.135(3).[2] Defendant raised the statute of limitation as a defense. Plaintiff responded with an equal protection challenge to the limitation period. Both the trial court and the Court of Appeals held that the six year statute of limitation violated the illegitimate child's right to equal protection of the laws because it denied her the right to paternal support to which legitimate children are entitled throughout their minority.[3] The trial court held that "the 'illegitimate' child's right to support from the natural parent is a substantial right and is a right equal to that of the 'legitimate' child's. Hence, any statute limiting this right during a child's minority works an illogical injustice on a child born out of wedlock and is constitutionally impermissible." The Court of Appeals ruled that "[w]eighing the state's interest in enacting the statutory limitation of six years against the constitutional rights of an illegitimate child to the protection of the laws equal to that afforded legitimate children, we hold that the

---

[1] Defendant attacked the state's standing to challenge the constitutionality of the statute because "it is not the child bringing the suit but the State of Oregon." The state is authorized by statute to litigate the issues of paternity and support, *see* ORS 109.100, 109.125 to 109.155, 23.789(2), 418.042(1), and does so on behalf of the child. The rights asserted, the ascertainment of paternity and enforcement of support contributions from the father, are the child's and all issues which may be raised by the child may also be raised by the state.

[2] ORS 109.135(3) provided:

"(3) A proceeding under ORS 7.215, 23.775, 23.795, 46.800, 109.070, 109.125 to 109.165, 109.220 and 109.252 shall be commenced within six years after the birth of the child."

The statute has since been amended to enlarge the limitation period to 10 years. In addition, ORS 12.160 was amended at the same time to include within its tolling provisions actions for filiation. ORS 12.160(1) tolls the statute of limitation during the child's minority for a maximum period of five years. Plaintiff conceded that neither the 10 year statute nor the tolling provision applies retroactively to this case.

[3] Children are entitled to support from their parents until the age of 18 or until 21 if attending school under the terms of the statute. ORS 109.153.

six-year statute of limitations is unconstitutional." 58 Or App at 671. Under article I, section 20 of the Oregon Constitution we affirm.

In reaching its decision, the Court of Appeals relied on *Mills v. Habluetzel,* 456 US 91, 102 S Ct 1549, 71 LEd 2d 770 (1982), decided after the trial court's decision in this case. *Mills* held unconstitutional a Texas one year statute of limitation for paternity actions. Prior to *Mills, Gomez v. Perez,* 409 US 535, 93 S Ct 872, 35 LEd 2d 56 (1973), had compelled Texas to grant its illegitimate children paternal support rights. Texas chose not to bestow entitlements equal to those enjoyed by legitimate children.[4] Instead, an illegitimate child's substantive right to support existed only where the child was able to establish paternity within one year of its birth. *See Mills,* 456 US at 94-95. In *Mills,* the Supreme Court was faced with a twofold inquiry: 1) whether the state had provided illegitimate children an adequate opportunity to obtain support as required by *Gomez* and, 2) if it had, whether the time limitation was substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. The court found the statute inadequate on both points.[5]

Our analysis of illegitimate children's rights to support begins from a different premise. We need not consider the first prong of the *Mills* test, the adequacy of the illegitimate child's substantive right to support, because under Oregon law all children are entitled to the same rights whether or not their

---

[4] *Gomez v. Perez,* 409 US 535, 93 S Ct 872, 35 LEd 2d 56 (1973) does not compel states to provide illegitimate children support rights equal to those enjoyed by legitimate children. It requires only that states provide some support rights. *Gomez* held that "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." 409 US at 538. Other states in addition to Texas have interpreted *Gomez* in this limited fashion. *Daniel v. Collier,* 113 Mich App 74, 317 NW2d 293 (1982) (upholding a six year statute of limitation); *Cessna v. Montgomery,* 63 Ill 2d 71, 344 NE2d 447 (1976) (upholding a two year statute of limitation.)

[5] The Federal Supreme Court has since overturned Tennessee's two-year statute of limitation for failure to meet the standards enunciated in *Mills. Pickett v. Brown,* No. 82-5576 (U.S. June 6, 1983).

parents have married. ORS 109.060.[6] This includes the right to support from both parents throughout minority. ORS 109.010,[7] 109.100.[8] We have no occasion to consider whether some lesser support right may be constitutionally "adequate." By statutory mandate the only adequate right is an equal right. These statutes reflect the principle set forth in article I, section 20 that classes of citizens cannot be denied privileges by virtue of personal characteristics, in this instance the circumstances of birth. Rather, we proceed to the second consideration in *Mills* and examine what reasons support the six year statute of limitation on filiation proceedings. That limitation period, by foreclosing initiation of filiation proceedings beyond a child's sixth birthday, erects a procedural barrier to the exercise of support rights to which a child is entitled until the age of 18, and it does so on the basis of illegitimacy, a status which defines a class to whom equal privileges have been otherwise extended by law.

■        Oregon regulates the methods by which paternity may be established in ORS 109.070.[9] That statute grants

---

[6] ORS 109.060 provides:

"The legal status and legal relationships and the rights and obligations between a person and his descendants, and between a person and his parents, their descendants and kindred, are the same for all persons, whether or not the parents have married."

[7] ORS 109.010 provides:

"Parents are bound to maintain their children who are poor and unable to work to maintain themselves; * * *."

[8] ORS 109.100 provides:

"(1) Any minor child or state agency on behalf of that minor child may, in accordance with ORCP 27 A., apply to the circuit court in the county in which the child resides, or in which the natural or adoptive father or mother of the child may be found, for an order upon such child's father or mother, or both, to provide for the child's support. The minor child or state agency may apply for the order by filing in such county a petition setting forth the facts and circumstances relied upon for such order. If satisfied that a just cause exists, the court shall direct that the father or mother appear at a time set by the court to show cause why an order of support should not be entered in the matter. If it appears to the satisfaction of the court that such child is without funds to employ counsel, the court may make an order directing the district attorney to prepare such petition and order to show cause.

    "* * * * *"

[9] ORS 109.070 provides:

"The paternity of a person may be established as follows:

"(1) The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed

presumptions of paternity for children born of married parents and provides that paternity may be otherwise resolved by marriage of the parents after the birth of the child, by filiation proceedings, by parental acknowledgment, and by other provisions of law. These other provisions have been held to include a determination of paternity under the Uniform Reciprocal Enforcement of Support Act, ORS 110.005 *et seq, Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975); a declaratory judgment proceeding, where the plaintiff mother is not the proper plaintiff to bring a filiation proceeding under ORS 109.124 and 109.125(1)(a),[10] *Fox v. Hohenshelt,* 275 Or 91, 549 P2d 1117 (1976); and a declaratory judgment after the death of the putative father to determine heirship pursuant to ORS 111.095(2) and 28.040, *Thom v. Bailey,* 257 Or 572, 481 P2d 355 (1971). This court has never considered whether the limitation period of ORS 109.135(3) applies when paternity is established or declared "by other provision of law." It is apparent, however, that, at least in the context of an heirship proceeding, paternity may be established at any time during the life of the child without regard to the amount of time since the child's birth. ORS 112.105.[11]

---

to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption.

"(3) By the marriage of the parents of a child after his birth.

"(4) By filiation proceedings.

"(5) By joint declaration of paternity filed with the Bureau of Vital Statistics in the form approved by the bureau and with the fee prescribed by the bureau. The declaration shall include information sufficient to identify the child and sworn statements of the natural father and the mother that the natural father is the father of the child and that there is no legal father. The bureau shall prepare a new birth certificate under the procedure established by ORS 432.425.

"(6) By paternity being established or declared by other provision of law."

[10] ORS 109.124 was added in 1979 to expand the definition of "child born out of wedlock." That statute provides:

"As used in ORS 109.125, a child born out of wedlock means a child born to an unmarried woman, or to a married woman by a man other than her husband, if the conclusive presumption in ORS 41.350 (6) (1979 Replacement Part) and 109.070(1) does not apply."

[11] *See Thom v. Bailey, supra,* 257 Or at 579-84 for a history of the illegitimate child's right to intestate paternal inheritance. It is true that before 1957, our laws

We must consider whether, in light of this inconsistent application, there is something unique to the determination of paternity in the context of a filiation proceeding which justifies the imposition of this limitation period.

Defendant asserts that the time limit provides putative fathers necessary protection from stale and fraudulent claims, and from defense of claims at a time when rebuttal evidence may have disappeared.

■      Difficulties of proof are a valid and important consideration in the regulation of paternity proceedings. However, the federal equal protection clause of the Fourteenth Amendment requires at a minimum that states refrain from totally foreclosing the rights of illegitimate children for reasons of proof problems alone. *Jimenez v. Weinberger,* 417 US 628, 94 S Ct 2496, 41 LEd 2d 363 (1974); *Mathews v. Lucas,* 427 US 495, 96 S Ct 2755, 49 LEd 2d 651 (1976).[12] These cases are

---

allowed an illegitimate child to inherit from its father only if paternity were established not later than three years after birth and while the father was still alive. ORS 111.239 Or Laws 1955. However, ORS 111.231 replaced that statute in 1957 and provided no such limitation on the establishment of heirship. Rather, ORS 111.231 required only that:

> "Before the relationship of father and child and other relationships dependent upon the establishment of paternity shall be given effect in determining inheritance rights, heirship must be established prior to the closing of the administration of the decedent's estate, or, if the decedent's estate is not administered in this or any other state, then within three years after the decedent's death. * * *"

This section was replaced, in 1969, by the current statute ORS 112.105, which appears to continue the expansion of the child's ability to establish heirship. *See* H. Krause, ILLEGITIMACY: LAW AND SOCIAL POLICY 302 (1971). A declaration of heirship may now be obtained up to ten years after the death of the alleged father. ORS 111.095(2), 28.040 and 12.140. ORS 112.105 requires in addition that paternity for purposes of intestate succession be established during the lifetime of the child.

*Thom* does not discuss the statute of limitation. The plaintiff child in *Thom* was 15 when the heirship proceeding was brought.

[12] *Jimenez v. Weinberger,* 417 US 628, 94 S Ct 2496, 41 LEd 2d 363 (1974) ruled that a complete bar to recovery of Social Security survivor benefits by illegitimate children born after the father's death did not reasonably promote the state interest of preventing spurious claims and was a denial of equal protection. But the requirement for proof of dependency for unacknowledged illegitimate children before entitlement to Social Security survivor benefits was upheld in *Mathews v. Lucas,* 427 US 495, 96 S Ct 2755, 49 LEd 2d 651 (1976) because a statute can properly address proof problems and may classify illegitimate children for different treatment so long as it "does not broadly discriminate between legitimate and illegitimates without more, but is carefully tuned to alternative considerations." 427 US at 513.

founded on the premise that if the state seeks to address difficulties of proof of paternity it must do so by alternatives which deal directly with that issue and in some way short of a total preclusion of the rights of illegitimate children. Article I, section 20 of the Oregon Constitution requires no less.

We have held that the appropriate beginning point in the analysis of a constitutional claim is with our own constitution. *Hewitt v. SAIF,* 294 Or 33, 41-42, 653 P2d 970 (1982); *State v. Caraher,* 293 Or 741, 750-52, 653 P2d 942 (1982); *Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981).

■       Article I, section 20 of the Oregon Constitution provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

The clause protects against a law's disparate treatment of groups or persons by virtue of characteristics by which it would be otherwise impermissible to classify people. Illegitimacy is one such characteristic. Our laws have made steady progress toward eliminating the legal disabilities under which illegitimate children have labored. *See Thom v. Bailey, supra,* 257 Or at 579-84; *see also* ORS 656.005(6) which eliminates any distinction between legitimate and illegitimate children for purposes of the Workers' Compensation laws.

The statutory scheme reflected in the filiation statute, ORS 109.125, imposes a limitation period only on children "born out of wedlock," *see supra,* note 10, and only on children seeking to establish paternity for purposes of support. We have shown that all children regardless of the circumstances of their birth may prove paternity for purposes of inheritance so long as they do so within ten years of the death of the putative father. Further, a legitimate child seeking to prove paternity who does not meet the statutory definition of "child born out of wedlock" may not employ the filiation statute and would not be subject to its limitation period. The statute classifies illegitimate children seeking to prove paternity for purposes of support less favorably then legitimate children who prove paternity for any purpose and illegitimate children who prove paternity for the resolution of heirship. This classification is drawn upon a characteristic,

the circumstances of birth, which our laws in other areas have eliminated as an impediment to the exercise of a person's rights.

■■ We recognize that the consequence of illegitimacy is that the child has no legally recognized father. By necessity the illegitimate child must prove paternity while its legitimate counterpart need not. We also recognize that the requirements for such proof are established by the state. Because equality in support rights means nothing if the father remains unknown, any limitations placed on the child's ability to prove paternity must be narrowly drawn, for a state may as easily discriminate invidiously by unduly burdensome requirements for proof of paternity as by precluding privileges outright. Accordingly, we hold that restraints on the ability of illegitimate children to ascertain paternity must be imposed only for reasons relating specifically to the proof problems encountered in paternity determinations. Restrictions not so justified cannot be upheld.

■ Oregon has directly addressed the difficulties of proof of paternity in statutes other than the limitation period. ORS 109.252 requires the use of blood tests if requested by a party, and under ORS 109.258 a defendant must prevail when all experts conclude that the test results eliminate the possibility of his paternity.[13] ORS 109.145 requires corroborating evidence of paternity in addition to the mother's testimony. Although proof of paternity in some cases may become more difficult with the passage of time, that possibility does not condone the total preclusion of illegitimate children beyond a certain age from attempting to ascertain their father's identity. In this case, sufficient proof existed to establish defendant's paternity; nonetheless, were the limitation period to be enforced the child would be precluded from seeking support to which she is entitled throughout her minority because a filiation proceeding was not commenced before her sixth birthday.

We find this additional hurdle unjustified by assertions that the time limit enhances accuracy and fairness in

---

[13] The federal due process clause entitles indigent paternity defendants to blood tests at state expense, at least where the state is a party. *Little v. Streater*, 452 US 1, 101 S Ct 2202, 68 L Ed 2d 627 (1981).

paternity adjudications. We are in agreement with the observations found in *County of Lenoir ex rel Cogdell v. Johnson,* 46 NC App 182, 264 SE2d 816, 820 (1980) quoting *J.L.P. v. C.L.B.,* 107 Daily Wash L Rep 401, 406 (Super Ct DC 1979):

> "The mere passage of a certain amount of time before the custodial parent sues for child support has no logical connection with whether the noncustodial putative parent is or is not the actual parent. The absurdity (and tragedy) of the situation becomes manifest when we consider that under the statute, an out of wedlock parent could voluntarily support his or her child from the time of birth to age ten; the custodial parent could neglect or not need to seek child support for two years but desperately need it when the child turns twelve; and at that point the child would be precluded from ever establishing parentage or receiving support from its parent."

The limitation period appears particularly arbitrary under our statutory scheme, which permits paternity declarations outside the filiation procedure without regard to the amount of time since the child's birth, for purposes of intestate succession up to 10 years after the alleged father's death.

Moreover, six years has no connection with the continuing nature of the support obligation. *State Dept. of Health v. West,* 378 So2d 1220, 1227 (Fla 1979), invalidating a four year statute of limitation, observes:

> "An action to determine paternity is not a stale claim when employed as a prerequisite to an illegitimate's obtaining of continuing, recurring support. This right has never become dormant, and for the statute of limitations to act to preclude this right on the basis that it is stale is illogical."

■     We find that the statute of limitation is a heavy-handed substitute for particularized requirements of proof. It denies to illegitimate children the privilege of seeking support from their fathers by placing an undue burden on the ascertainment of paternity which neither advances the accuracy of the outcome of the case nor diminishes the likelihood of fraudulent claims. Such an impediment to the exercise of the right to paternal support, a right which belongs equally to all

children, cannot be sustained under article I, section 20 of the Oregon Constitution. Accordingly, we hold the statute unconstitutional.

We affirm the decisions of the trial court and Court of Appeals.